## WACHSMAN v. WACHSMAN.
### No. 231.

Circuit Court of Appeals, Second Circuit.

Feb. 16, 1931.

See, also, 46 F.(2d) 482.

Ivan Konigsberg, of New York City, for appellant.

John L. Ketcham, of New York City, for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for the alleged infringement of United States letters patent No. 1,358,483, to Adolph Wachsman, for a stop mechanism particularly adapted for use on machines for knitting sweaters, hosiery, and similar articles. The device operates to close an electric circuit for the purpose of stopping the knitting machine whenever a knot or similar defect in the yarn coming from the bobbin stand exerts undue tension or pull, thereby actuating the stop device.

The specification states that the invention "embodies improvements in the spring con-

nection for closing the circuit * * * in the means for regulating the tension on the actuating lever of the device, and in the efficient, short leverage whereby the lever and spring are brought into positive engagement without producing undue pressure on the spring."

The improvements shown in the patent comprise a boxlike support, to which is pivoted a switch lever having a slot. To the support there is secured a hooked member having a depending nose normally extending through a slot in the lever. A leaf spring forms one terminal of an electric circuit which includes a magnet. The other terminal of the circuit is the knitting machine itself, which supports a disc to which a number of the stop devices are attached, one for each knitting machine. The yarn passes upward from the bobbin through an eye in a gauge plate, on over the lever, and then to the knitting machine. The lever is held in its upper position by a coiled spring, the tension of which is adjusted by a lever having a finger piece in engagement with one of a row of notches whereby the spring may be lengthened or contracted. When there is a knot in the yarn, it can no longer pass through the eye in the gauge plate. It, therefore, exerts an excess pull on the lever and moves it against the force of the spring. By the rotation of the lever upon its pivot, its inner end is brought against and contacts with a leaf spring to close the circuit. This energizes a magnet and operates a trip member of the knitting machine to stop it.

The claims in the patent are as follows:

"1. In a stop mechanism for knitting machines, a suitable support, a lever pivoted thereto provided with a slot, a hooked member having its nose or end normally extending through the slot, a source of electrical energy, an electromagnet, a trip actuatable thereby, and a leaf spring in circuit with the source of electrical energy and magnet and cooperating with the pivoted lever so that the latter may make and break the circuit depending on the position of the hooked member with reference to the slot in said lever, whereby, when the lever is in engagement with the spring, the electromagnet is energized and the trip actuated, and when the lever is disengaged from the spring the circuit is broken.

"2. In a stop mechanism for knitting machines, a suitable support, a lever pivoted thereto, a source of electrical energy, an electromagnet, a trip actuatable thereby and a leaf spring in circuit with the source of elec-tric energy and magnet and cooperating with the pivoted lever, a spring having one end affixed to said pivoted lever and the other end secured to a second lever and means for adjusting the latter to vary the tension on the spring and the pivoted lever.

"3. In a stop mechanism for knitting machines, a suitable support, a lever pivoted thereto, a hooked member extending from the support and cooperating with the lever so as to normally form an inclosed space for the passage of the thread to a knitting machine, a source of electrical energy, an electromagnet, a trip actuatable thereby and a leaf spring in circuit with the source of electric energy and magnet and cooperating with the pivoted lever, a coiled spring for exerting tension on the lever, and a manually operated lever for regulating the tension on the spring."

The original claims of the patent were six in number, and were all rejected on United States patent No. 706,840 to Martin & Palmer and United States patent No. 808,475 to Patterson, among others.

The amended claim 1 was allowed upon the contention of Wachsman that none of the references "show a lever provided with a slot and a hooked member cooperating with said slot." These features were embodied in the amended claim.

The amended claim 2 was allowed because Wachsman added to the original claim the element of "a second lever and means for adjusting the latter to vary the tension on the spring and the pivoted lever."

The amended claim 3 was allowed because of the addition of the words of the specific element, "a hooked member extending from the support and cooperating with the lever so as to normally form an inclosed space for the passage of the thread to a knitting machine."

In other words, a patent for improvements in a confessedly old art finally won in the Patent Office through a limitation of its scope to a slotted lever and a hooked member having a nose extending through the slot which in co-operation formed a yarn inclosing space.

All of the elements appear in United States patent No. 706,840 to Martin & Palmer. This fact seems to have been conceded by complainant's expert Murdock in his cross-examination, where he stated that:

"The elements possibly are here, but in a disjointed condition.

"Q. By disjointed condition do you mean arranged differently? A. Yes sir.

"Q. Otherwise all the elements, as I understand you, of the claims of the patent in suit are found in Patent No. 706,840? A. Yes, I admit that.

"Q. So that there remains nothing in the claims of the patent in suit which is not shown in this patent, is that the logical inference to be drawn from your answer? A. Except the arrangement.

"Q. It is differently arranged? A. Yes sir."

There can be no doubt that complainant's expert was correct when he said that the elements in the Martin & Palmer patent, No. 706,840, were arranged differently from those of the patent in suit. Yet they do seem to perform the same function as those of Wachsman. In Martin & Palmer there is a pivoted lever C with pins D which form a slot. This lever, when pulled down by the tension of the yarn, instead of directly contacting with a leaf spring in order to close the circuit and thereby stop the machine, causes the rod K to fall by gravity and through its extended arm to contact with a spring clip terminal N which should fairly be regarded as the equivalent of the leaf spring of complainant's patent. The rod K, when the machine is operating, extends between the pins D and is thus "a * * * member having its nose or end normally extending through the slot." It has a bent-up portion L, which lies directly between the pins D and is supported by the yarn. This bent-up portion of the rod forms "an inclosed place for the passage of the thread" and serves as a guard to prevent the yarn from slipping off the pins D like the "hooked member having its nose or end normally extended through the slot" of Wachsman. The operation of the device is thus described in the Martin & Palmer patent, No. 706,840, at page 1, line 67:

"When * * * there is any pull on the yarn by reason of any difficulty of the yarn leaving the bobbin, the tension on the arm between the bobbin and the knitting machine will draw down the pins D, and with it the block C, overcoming the tension of the spring E, so that the yarn will slip off the pins, and thus release the rod K, which immediately falls, and the arm J will contact with the spring N, thus closing the circuit, which is so connected with the shipping-lever that the same will be operated to stop the machine."

The device of Patterson, No. 808,475, likewise resembles in function the patent in suit. Its principal difference is having nothing which acts as a guard to prevent the yarn from slipping off the concave portions of the lever arms in which it runs when they are in normal position, whereas the nose of complainant's stop mechanism operates as a guard to prevent the yarn from sliding off the switch lever. In other words, Patterson relied on the concave portions of his switch levers rather than on a completely "inclosed space for the passage of the thread." Both the pins D of Martin & Palmer and the concave portions of the switch levers of Patterson form channels, the shoulders of which would ordinarily keep the yarn from coming off the switch lever.

The patents to Martin & Palmer and to Patterson likewise both disclose a device to stop the machine when knots, thickening, or entanglement develop in the yarn fed into the knitting mechanism. Martin & Palmer (page 2, line 13) say: " * * * We preferably employ a guide or knot-catcher common in the art for detaining the thickened portions of the knitting yarn, so as to cause a further action of the machine to create a tension on the detector mechanism of the stop-motion device, and in the drawings we have shown a guide C', through which the yarn passes, which can be varied in size or placed at any suitable point."

Patterson (page 1, line 99) says: " * * * The upper set of radial arms x' carry my stop-motion devices which operate when any unusual tension comes upon the yarn from a knot or obstruction on the yarn or when the yarn hangs upon the bobbin."

At page 3, line 11, of the specification, the yarn is described as passing through "a yarn-guide $D^1$ and then through another one, $D^2$, below the bobbins, and thence to the needles of the machine."

Each of the foregoing two patents discloses a spring acting against the pull of the yarn on the switch lever to hold it against a stop and to keep the circuit open when the machine is running normally, and in each the spring is adjustable in tension by a thumb screw or other simple device equivalent to the second lever 19 and its finger pieces 20 of the patent in suit.

Defendant's stop motion consists of a support, a switch lever with bent porcelain hooks to prevent the yarn from falling off, a spring pulling the switch lever against a stop on the support and a screw for adjusting the tension of the spring. It also has a bent wire lever pivoted to the support, extending be-

tween the porcelain hooks and resting lightly on the yarn when the machine is in normal operation. When there is no yarn in the machine or the yarn runs out, the wire drops between the porcelain hooks and hangs below the level of the switch. This causes the inner end of the wire to make contact with a spring. and thus to close the circuit and stop the machine, which cannot start again until the wire is elevated so as to break the circuit. In other words, the bent wire lever acts as an end detector and a safety stop motion. Tension of the yarn upon the porcelain hooks of defendant's switch lever will rotate it on its fulcrum, close the circuit, and stop the machine entirely without reference to any action of the bent wire lever and without its presence in the device. But, in spite of the independent function of the bent wire lever as an end detector and a safety stop, complainant insists that it is "a hooked member co-operating with" a "slot" within the meaning of claim 1 and "a hooked member * * * co-operating with the lever so as to normally form an inclosed space for the passage of the thread to the knitting machine" within the meaning of claim 3, and therefore infringes. Such the trial court held it to be.

We do not say that the device illustrated in Wachsman patent has not distinctive and useful features, or that to create it involved no more than a journeyman's skill. But on its face it shows: (1) A fixed hooked member; (2) a slotted member embracing the former.

The wire lever of defendant is not only movable, rather than fixed, but the curved porcelain rods do not so engage it as certainly to prevent the yarn from pulling off while the machine is in normal operation. Although the tendency of the wire is to act as a guard, it is a light and uncertain barrier compared with the "hooked member" of the patent in suit which forms a fixed abutment that makes it impossible for the yarn to slide off the porcelain rods until the nose is completely out of the slot.

It is argued that the claims do not call for a fixed nose. In terms they do not. But the original broad claims of Wachsman were rejected on patent No. 706,840 to Martin & Palmer. The device shown in that patent had a "nose extending through the slot," if defendant's has one. It consisted of a bent wire or rod resting on the yarn and when embraced by the pins D forming "an inclosed space for the passage of the thread." Moreover, the bent wire or rod of Martin & Palmer, like defendant's, rested on the yarn, operated by

gravity and served both as an end detector and a safety stop. Likewise the Martin & Palmer machine could not start until the rod was elevated and rested on the yarn.

The defendant, by adding an end detector to his stop mechanism and relying on its light wire to supplement the curved hooks of the switch lever in keeping the yarn from slipping off, more nearly followed Martin & Palmer than Wachsman. Wachsman secured a narrow patent, and we hold that, in view of the state of the art, it was limited to a *fixed hooked member and a slotted member embracing the former*. Defendant has used neither, and therefore has not infringed.

The decree is reversed, and the cause remanded, with direction to dismiss the bill.